IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FREESE & GOSS, PLLC, RICHARD A. FREESE and TIM K. GOSS, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:17-cv-360-L |
| SHEILA M. BOSSIER and BOSSIER & ASSOCIATES, PLLC, | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants Sheila M. Bossier and Bossier & Associates, PLLC (collectively, the "Bossier parties") filed a motion to dismiss/abstain, or in the alternative, motion to transfer venue, *see* Dkt. No. 4, which United States District Judge Sam A. Lindsay referred to the undersigned United States magistrate judge for findings and recommendation, *see* Dkt. No. 11. Plaintiffs Freese & Goss, PLLC, Richard A. Freese, and Tim K. Goss (collectively, "F&G") filed a response, *see* Dkt. No. 8, the Bossier parties filed a reply, *see* Dkt. No. 12, and F&G filed a motion for leave to file surreply, *see* Dkt. No. 14. The undersigned issues the following findings of fact, conclusions of law, and recommendation.

**Background**

Ms. Bossier first started working with F&G in or around 2007. At the time, the parties jointly represented multiple personal injury clients in various litigation

-1-

matters.

Ms. Bossier formally joined F&G in January 2013 as a non-equity partner and worked out of what would become a satellite office for F&G in Jackson, Mississippi. She left the firm in August 2016.

Ms. Bossier contends that she is owed money by F&G relating to her time at the firm. To support a potential claim on this basis, Ms. Bossier filed a petition for pre-suit discovery under Texas Rule of Civil Procedure 202 in Dallas County on October 26, 2016. In that petition, she described the Texas state court as a "proper" venue for the "anticipated suit in Dallas County because a substantial portion of the acts or omissions occurred in [that] jurisdiction." *See* Dkt. No. 9 at 70.

On December 16, 2016, the Friday afternoon before the Monday Rule 202 hearing, F&G filed a lawsuit against Ms. Bossier in state court in Dallas County. F&G asked the state court for a judicial decree that would "clarify the rights, status, legal relations and obligations of the parties as related to the non-equity member agreement and joint venture agreements." Dkt. No. 1 at 10. These agreements govern the money that Ms. Bossier may be entitled to during her time as a non-equity partner at F&G.

The Bossier parties filed a separate action in Hinds County, Mississippi on February 1, 2017. In the Mississippi action, the Bossier parties assert that F&G failed to pay money owed to them for Ms. Bossier's work at F&G. *See generally* Dkt. No. 5 at 15-49. F&G removed the Mississippi action to federal court shortly after it was filed.

The Bossier parties then removed this action to federal court. The Bossier parties also filed the pending motion asking the Court to act on its discretion under the

-2-

Declaratory Judgment Act to dismiss or abstain from ruling on this action. They alternatively ask the Court to transfer the action to the Southern District of Mississippi, Northern Division. F&G filed a response to these motions, the Bossier parties filed a reply, and F&G filed a motion for leave to file surreply.

For the reasons explained below, the Court should deny F&G's motion for leave to file a surreply and the Bossier parties' motion to dismiss/abstain and alternative motion to transfer venue.

## Legal Standards and Analysis

I.    <u>The Court should deny F&G's motion to file a surreply.</u>

F&G filed a motion for leave to file a surreply on this motion. F&G contends that they are entitled to a surreply because the Bossier parties raise new arguments and evidence supporting those arguments in their reply. Dkt. No. 14 at 1-2.

"Once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* Local Civil Rule 7.1. Thus, the movant is entitled to file the last pleading. Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter. The court has found that surreplies usually are not that helpful in resolving pending matters, and only permits pleadings beyond Local Rule 7.1 in exceptional or extraordinary circumstances." *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001).

F&G has not demonstrated exceptional circumstances that warrant the filing of a surreply in this action. F&G contends that it is entitled to file a surreply because

the Bossier parties introduce new evidence and new arguments suggesting that "Plaintiffs acted in bad-faith by inducing [Defendants] to delay filing their lawsuit in a forum of Defendants' choosing" by filing the suit while settlement negotiations were ongoing. *See* Dkt. No. 14 at 1-3. But the Court, "as a matter of course, does not entertain arguments raised for the first time ... in a reply." *Contrieu Corp. v. Pura Vido Tequila Co., LLC*, No. 3:12-cv-2257-N, 2012 WL 12886422, at *1 n.1 (N.D. Tex. Oct. 2, 2012). As a result, "there is no prejudice to [F&G] and no need for a surreply brief. The court [should] therefore den[y] [F&G's] [m]otion." *Lacher*, 147 F. Supp. 2d at 540.

## II.    The Court should decide, not dismiss, this declaratory judgment action.

The federal Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Declaratory relief, therefore, is a matter in this Court's discretion. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).

F&G appears to contend that the Court should exercise this discretion based on the framework provided by the first-to-file rule. The first-to-file rule is a "discretionary doctrine," which provides that, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174

F.3d 599, 603 (5th Cir. 1999).

But the first-to-file rule does not dictate the outcome of this motion. "Typically, the first filed action controls which court should maintain jurisdiction." *Mill Creek Press, Inc. v. The Thomas Kinkade Co.*, No. 3:04-cv-1213-G, 2004 WL 2607987, at *7 (N.D. Tex. Nov. 16, 2004) (citing *Texas Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 2d 994, 997 (E.D. Tex. 1993)). But, in light of the Declaratory Judgment Act, courts have found that "there is a 'general policy' that a party whose rights are being infringed should have the privilege of electing where to enforce its rights." *Id.* (citing *Texas Instruments*, 815 F. Supp. 2d at 997; *Cummins-Allison Corp. v. Glory Limited*, No. Civ.A. 2-03-cv-358TJ (E.D. Tex. May 26, 2004)). "It is this policy which lays the framework for whether or not the court should order dismissal." *Id.*

When considering whether to dismiss a declaratory judgment action, the Court must thus engage in the following three-step inquiry. First, the Court must determine whether the declaratory judgment action is justiciable. Second, if it has jurisdiction, the Court must resolve whether it has the "authority" to grant declaratory relief in the case presented. And, third, the Court must determine how to exercise its broad discretion to decide or dismiss the declaratory judgment action based on the concerns of federalism, fairness, and efficiency by applying the factors enumerated in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994) (the "*Trejo* factors"). *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387-88 (5th Cir. 2003).

A.    The declaratory judgment action is justiciable.

Determining whether an action is justiciable typically requires a court to resolve

whether an "actual controversy" exists between the parties. *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "'As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests.'" *Id.* at 896 (quoting *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Id.* (citing *Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Int'l Union*, 483 F.2d 603 (5th Cir. 1973, among other sources)).

A real and immediate controversy between the parties exists here. F&G seeks declaratory relief clarifying that they do not owe the Bossier parties any amount as bonus, salary, or other compensation. The Bossier parties dispute this assertion, arguing that they "[are] owed monies on settlements [F&G] had collected." Dkt. No. 4 at 6. And the Bossier have, in fact, filed counterclaims in this action based primarily on their allegation that "Plaintiffs reneged on their financial obligations and promises to Bossier, which included promises to substantially share contingency fee recoveries with her." Dkt. No. 10 at 9.

There is no concern that this case is too abstract or hypothetical to be justiciable. *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008) ("[T]he issue whether Plaintiffs Hardee's and Johnson's void-for-vagueness claims were initially ripe for review has been mooted by the change in posture of the litigation at the time of trial and appeal.").

B.    <u>The Court has the authority to grant declaratory relief.</u>

A district court lacks the authority to weigh the merits of a declaratory judgment action when: "(1) the declaratory defendant previously filed a cause of action in state court; (2) the state court involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [28 U.S.C. §] 2282," the Anti-Injunction Act. *Sherwin-Williams*, 343 F.3d at 388 n.1 (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)). The presence of all three factors mandates abstention. *See Cont'l Ins. Co. v. Gifford-Hill & Co., Inc.*, No. 3:12-cv-925-D, 2013 WL 1875930, at *2 n.6 (N.D. Tex. May 6, 2013). And "[t]he want of any one factor defeats mandatory abstention." *AIX Specialty Ins. Co. v. Western States Asset Mgmt., Inc.*, No. 3:12-cv-4342-M, 2013 WL 4603775, at *2 (N.D. Tex. Aug. 29, 2013).

Here, this Court is not prohibited from enjoining any state proceeding because the parallel action in question has been removed to federal court. *See Sherwin-Williams*, 343 F.3d at 387-88 (noting that the Anti-Injunction Act does not apply because there is not a pending state court action between the parties). The Court is consequently not required to abstain from deciding this declaratory judgment action.

C.    <u>The *Trejo* factors weigh against dismissing this action.</u>

Because this case presents a justiciable controversy and the Court has the authority to grant declaratory relief, the undersigned must decide whether the Court should exercise its discretion to hear this action. This determination rests on "whether

-7-

the questions in controversy between the parties to [this action] ... can be better settled in the proceeding pending in [Mississippi]." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

There are "seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action." *Sherwin-Williams*, 343 F.3d at 388. These include: "(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Trejo*, 39 F.3d at 590-91.Three principal concerns – federalism, fairness, and efficiency – underpin the undersigned's inquiry under the so-called *Trejo* factors. *See Sherwin-Williams*, 343 F.3d at 390-92.

These factors weigh against dismissal.

  1. <u>The federalism factors strongly weigh against dismissal.</u>

The undersigned first considers the *Trejo* factors relating to federalism concerns – namely the first and seventh factors. These factors ask the Court to consider the

impact of any parallel pending state court action and any state judicial decree that the Court would have to decide, in place of a state court, if it were to hear the case. *See Trejo*, 39 F.3d at 590-91. The federalism factors weigh against dismissal here. The parallel proceeding in question has already been removed to federal court. As a result, there is no concern that deciding the case in this Court will "interefere[] with the orderly and comprehensive disposition of a state court litigation." *Brillhart*, 316 U.S. at 495. Nor is there any concern that a federal court will construe a state judicial decree that a state court is better positioned to decide. While "[t]he lack of a pending parallel state proceeding [does] not automatically require a district court to decide a declaratory action," "it is a factor that weighs strongly against dismissal." *Sherwin-Williams*, 343 F.3d at 394.

## 2.  The fairness factors weigh against dismissal.

The undersigned next considers the second, third, and fourth *Trejo* factors. These factors require the Court to assess whether the plaintiff filed suit in anticipation of a lawsuit, engaged in forum shopping in bringing suit, or gains possible inequities in time or to change forums as a result. *See id.* at 391. In short, these factors require the Court to assess whether F&G is improperly using the declaratory judgment process to unfairly gain access to this Court at this time. *See id.* at 391-92.

The United States Court of Appeals for the Fifth Circuit has recognized that forum selection is required by the filing of a lawsuit and that declaratory judgment actions regularly are anticipatorily filed. *See id.* at 391-92. These *Trejo* factors

therefore are not to be literally interpreted. *See id.*

The Bossier parties argue that "[t]here is little doubt that [F&G] filed their action because they recognized that [the Bossier parties] were investigating a potential lawsuit against them ..., and they made this a race to the courthouse to pick the forum." Dkt. No. 13 at 4.

The undersigned agrees that F&G filed this declaratory judge action and that they were on notice that the Bossier parties might file suit. But, as the Fifth Circuit has explained, "[f]ederal declaratory judgment suits are routinely filed in anticipation of other litigation. The courts use pejorative terms such as 'forum shopping' or 'procedural fencing' to identify a narrower category of federal declaratory judgment lawsuits filed for reasons found improper and abusive, other than selecting a forum or anticipating related litigation. Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams*, 343 F.3d at 390.

Accordingly, the fairness factors would weigh in favor of dismissal only where the Bossier parties establish that F&G's decision to file this declaratory action was an improper or abusive form of forum selection.

The Bossier parties appear to contend that F&G engaged in procedural fencing because F&G was on strong notice that the Bossier parties would file suit when F&G initiated this action. They specifically contend that "[the Bossier parties] made [F&G] aware that [the Bossier parties] believed that certain claims existed that required

-10-

certain discovery" and "had been engaged in dispute resolution" at some point. Dkt. No. 4 at 14. The Bossier parties rely on *AIX Specialty Ins. Co. v. Western States Asset Mgmt., Inc.*, No. 3:12-cv-4342-M, 2013 WL 4603775 (N.D. Tex. Aug. 29, 2013), to support this contention. They argue that, in *AIX Specialty*, now-Chief Judge Barbara M. G. Lynn "held that [the] [p]laintiff 'engaged in 'reactive' litigation and, therefore, unfair procedural fencing' by filing [a] declaratory judgment action when [the plaintiff] was on strong notice that the [d]efendant was likely to file a state court action." Dkt. No. 4 at 14 (citing *AIX Specialty*, 2013 WL 4604775 at *13).

The undersigned disagrees that this analysis here is controlled by *AIX Specialty* and, instead, concludes that the fairness factors weigh against dismissal in this action for a number of reasons.

First, this action is easily distinguishable from *AIX Specialty*. Contrary to the Bossier parties' suggestion otherwise, in that case, Judge Lynn did not find that a party engages in procedural fencing by filing a declaratory judgment action any time that it files a suit in anticipation that another party may file a lawsuit first. *See AIX Specialty*, 2013 WL 4603775, at *4 (noting that "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation is not itself improper anticipatory litigation or otherwise abusive 'forum shopping'") (internal citation omitted). Judge Lynn found that the plaintiff engaged in unfair procedural fencing because it filed suit even though it was on notice that the defendant was likely to file "a non-removable state court action." *Id.* She reasoned that,

by excluding non-diverse parties that it knew the defendant would likely have sued in state court, the plaintiff improperly manipulated the forum in which the suit would be heard. *See id.* at *4-*5 (citing *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1372-73 (9th Cir. 1991, overruled on other grounds by *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998); *Chevron U.S.A., Inc. v. Cureington*, No. 10-0764, 2011 WL 1085661, at *8 (W.D. La. Feb. 18, 2011); *Great Lakes Reinsurance (UK) PLC v. Spielvogel*, No. H-06-0982, 2006 WL 1663755, at *3 (S.D. Tex. June 13, 2006), each for the proposition filing a federal suit in anticipation that a non-removal state court action constitutes improper forum-selection).

Here, there is little indication that F&G filed suit in Texas to preemptively stop the Bossier parties from filing suit in a different forum. The Bossier parties' own actions actually appear to suggest the opposite. F&G was allegedly aware that the Bossier parties would file suit because Ms. Bossier filed a Rule 202 pre-suit petition before F&G initiated this action. *See* Dkt. No. 7 at 4. She filed the petition seemingly for the same reasons that F&G filed this declaratory action – to "seek[] information that would allow her to construct an accurate accounting of monies owed." Dkt. No. 4 at 7. But that petition was filed in the state court in Dallas County – the same court where F&G filed this suit. Further, in that same petition, the Bossier parties describe the Texas state court as a "proper" venue for the "anticipated suit in Dallas County because a substantial portion of the acts or omissions occurred in this jurisdiction." *See* Dkt. No. 9 at 70. The Bossier parties should not now be heard to contend that they

were blind sided by F&G's decision to select this venue. *See United States Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998) (finding that "the evidence of 'procedural fencing' was scant" where "there was little or no indication" that the declaratory judgment defendants would name nondiverse parties in the subsequent state court action). They, in fact, might be judicially estopped from so arguing. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (explaining that a court should judicially estopp a party from taking a position that is inconsistent with a prior legal position where a court accepted the prior position and the party did not act inadvertently).

Second, F&G's decision to file the declaratory action is unlikely to affect the body of law that applies to this action. The Fifth Circuit upheld a dismissal of a declaratory judgment action where the declaratory plaintiff was able to alter the substantive law that would have applied to the action. *See Sherwin-Williams Co.*, 343 F.3d at 397 (explaining that the Fifth Circuit upheld a dismissal of a declaratory judgment action in *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983), because Texas and California's respective choice of law rules "differed significantly"). But neither the substantive law nor procedural law is likely to change based on whether this action or the Mississippi action proceeds. The Northern District of Texas and the Southern District of Mississippi each follow federal procedural law as governed by the United States Court of Appeals for the Fifth Circuit. And Texas and Mississippi appear to have substantially similar choice-of-law rules. *See Ingalls Shipbuilding v. Fed. Ins.*

*Co.*, 410 F.3d 214, 232 (5th Cir. 2005) ("Like Mississippi, Texas has adopted the most-significant-relationship approach of the Restatement (Second) of Conflict of Laws."); *cf Sherwin-Williams Co.*, 343 F.3d at 397.

The Bossier parties summarily contend, for the first time on reply, that "[t]he Court's retention of this first-filed action may deprive Defendants as 'true plaintiffs' of their right to open and close evidence and possibly provided Plaintiffs a vehicle to seek recovery of attorney's fees – a vehicle that would not exist otherwise." *See* Dkt. No. 12 at 9 (citing *Chapa v. Mitchell*, No. A-05-cv-769-JN, 2005 WL 2978396, at *3 (W.D. Tex. Nov. 4, 2005)).

But these arguments fail, even assuming that they are appropriate for the Court to consider. *See Contrieu Corp.*, 2012 WL 12886422, at *1 n.1 (noting that the Court, "as a matter of course, does not entertain arguments for the first time ... in a reply").

Contrary to the Bossier parties' suggestion, the party who has the burden of proof opens and closes the case regardless of whether that party filed the complaint. *See U.S. Fidelity & Guaranty Co. v. Carlton*, 202 F. Supp. 719, 721 (N.D. Tex. 1962) (noting that an employee who alleged that he was entitled to worker's compensation had the burden of proof under the worker's compensation statute and consequently opened and closed the evidence even though the insurer had brought suit). A declaratory judgment action therefore does not change the order in which the case is opened and closed.

Further, "[t]he Declaratory Judgment Act permits the recover of attorney's fees

only if they are recoverable under non-declaratory judgment circumstances." *Employers Health Ins. Co. v. Leach*, 976 F. Supp. 1062, 1067 (citing *Mercantile Nat'l Bank at Dallas v. Bradford Trust Co.*, 850 F.2d 215 (5th Cir. 1988)).

Third, F&G does not appear to have taken any affirmative steps to prevent or discourage the Bossier parties from filing suit – even if they elected not to wait for the resolution of the Bossier parties' petition for pre-suit discovery. *Cf. Chapa*, 2005 WL 2978396, at *3 ("Plaintiff filed preemptively ... by inducing Defendants into believing that he was committed to resolving this dispute out of court").

The Bossier parties contend, for the first time on reply, that F&G filed this declaratory action while the parties were still engaged in settlement negotiations. *See* Dkt. No. 14 at 1-3. This argument fails – even if the Court were to credit it – because it is undermined by the Bossier parties' own motion. There, the Bossier parties explain that they only filed the pre-suit discovery petition to begin with because while "the parties had been engaged in dispute resolution," "that dialogue was abruptly discontinued by [F&G] after [the Bossier parties] engaged the assistance of a Texas lawyer to address [F&G's] position that Bossier had no claims under Texas law." Dkt. No. 4 at 14.

Admittedly, F&G appears to have received a slight advantage in time by filing this action just over six weeks before the Bossier parties were evidently ready to file the Mississippi action. This advantage is also arguably unfair because F&G gained this advantage by filing this suit even though it was on notice that the Bossier parties were

not yet prepared to pursue its claims. After all, F&G filed this suit just before the state court held the hearing on the Bossier's petition for pre-suit discovery. *But see Sherwin-Williams*, 343 F.3d at 400 (citing *Aetna Cas. & Sur. Co.*, 138 F.3d 419, 423 (4th Cir. 1998) (suggesting that the declaratory plaintiff only has an unfair advantage in time when "the declaratory judgment has been restricted from filing state court actions," such as where "it had not exhausted state administrative remedies")).

F&G's potentially unfair advantage in time might have tipped the fairness factors toward dismissal under a different set of facts. But it is not sufficient here. The Bossier parties have not asserted that they have been unable to keep up with the pace of this litigation or have been otherwise disadvantaged because this action started about a month-and-half earlier than expected. *See* Dkt. No. 4 at 14 (arguing only that "Plaintiffs' choice of forum causes Defendants great expense and inconvenience"). After all, both actions appear to be in the early stages of litigation.

As a result, in light of the other reasons discussed above, the second, third, and fourth *Trejo* factors weigh against dismissal.

### 3.   The efficiency factors weigh against dismissal.

The fifth and sixth *Trejo* factors require the Court to assess whether this Court is a convenient forum for the parties and witnesses and whether retaining the lawsuit would serve judicial economy. *See Sherwin-Williams*, 343 F.3d at 392. In short, these factors "primarily address efficiency considerations." *Id.*

As discussed in further detail in the section below concerning the motion to

transfer, the efficiency considerations weigh in favor of retaining the action.

While this case arguably arises out of Ms. Bossier's work on cases in Mississippi, this action ultimately concerns the money that F&G owes the Bossier parties (and vice-versa) during the course of Ms. Bossier's employment at F&G. As a result, the documents that will be at issue are likely employment and financial documents that are in F&G's possession and that F&G primarily holds in Dallas. *See* Dkt. No. 8 at 21. And the potential witnesses will likely consist of those who can speak to promises F&G's equity partners made to her during her time at the firm and the costs and expenses that the firm can properly attribute to her during this period. In other words, the witnesses will likely be comprised largely of current and former F&G employees and outside contractors. They, too, are overwhelmingly based in Dallas, Texas. *See* Dkt. No. 9, Ex. A at 2.

The Bossier parties contend that a number of potential non-party witnesses will be in Mississippi. But they fail to meaningfully explain – and the undersigned is unable to infer – precisely why their testimony is important to this dispute concerning what a Dallas-based law firm owes a former non-equity partner during the course of her employment. *See* Dkt. No. 4 at 15 (describing the potential witnesses, generally, as "Mississippi lawyers hired to jointly represent the parties in Mississippi, members of the Mississippi law firm with whom Defendants entered into an agreement in 2006 concerning the joint representation of Mississippi PCB clients, and possibly former staff members of F&G in Mississippi"). After all, while the case potentially arises out

work that Ms. Bossier performed in Mississippi, it ultimately concerns the money that a Texas-based firm owes to one its non-equity partners during the course of her employment. The undersigned cannot conclude that it would be more efficient to hear this action in Mississippi in the interest of potential witnesses whose testimony may not be especially material. *See Hayes v. Segue Software, Inc.*, No. 3:01-cv-1490-D, 2001 WL 1464708, at *4 (N.D. Tex. Nov. 4, 2001) (noting that "[t]he materiality and importance of each anticipated witness' testimony, rather than the number of witnesses residing in each location, is most important under forum non conveniens doctrine").

The efficiency to be gained due to the location of the likely evidence and witnesses at issue is sufficient because there is no indication that this Court or the Southern District of Mississippi is better equipped to hear the claims at issue. As discussed further below, it is not clear what law will be applied to most or all of the claims. F&G contends that one of the contracts at issue contains a choice of law provision. But neither party includes the text of that provision or adequately explains why this provision applies to none, some, or all of the claims at issue.

4.    On the whole, the *Trejo* factors do not support dismissal.

Having considered the concerns of federalism, fairness, and efficiency by applying the *Trejo* factors, the undersigned concludes that the Court should decide F&G's declaratory action rather than dismiss it or abstain from deciding it.

II.    The Court should not transfer the action.

The Bossier parties also ask the Court to transfer this action to the Southern District of Mississippi for forum non conveniens.

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A plaintiff's original choice of forum is ordinarily entitled to some deference. *See In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). This means that the moving party must "demonstrate[] that the transferee venue is clearly more convenient." *Id.* But, while a plaintiff's choice of forum "should be respected" unless "the transferee venue is clearly more convenient," the plaintiff's "choice of forum ... is not an independent factor within ... the § 1404(a) analysis." *Id.* at 314 n.10, 315 (internal quotation marks omitted). Rather, "a plaintiff's choice of venue is to be treated as a burden of proof question." *Id.* at 314 n. 10 (internal quotation marks omitted).

In applying Section 1404(a), the United States Court of Appeals for the Fifth Circuit directs courts to first determine "whether the judicial district to which transfer is sought would have been brought in a district in which the claim would have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once this determination is made,

[the Court] turn[s] to the language of § 1404(a), which speaks to the issue

-19-

of "the convenience of the parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.* (citations omitted).

Transfer of venue under Section 1404(a) is at the Court's discretion, considering "[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *El Chico Restaurant. Ca Texas, Inc. v. Carroll*, No. 3:09-cv-2294-L, 2010 WL 2652286, at *2 (N.D. Tex. June 29, 2010) (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)).

As an initial matter, the undersigned concludes that this action could have been brought in the Southern District of Mississippi. Civil actions may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," among other locations. *See* 28 U.S.C. § 1391(b). Ms. Bossier is a resident of Madison County, Mississippi, which is located in the Southern District of Mississippi. And the only other defendant, Bossier & Associates LLP, also resides in Mississippi. *See Rabin v. McClain*, 881 F. Supp. 2d 758, 764 (W.D.

Tex. 2012) ( "[A]s Texas limited liability companies, it ... is clear that this Court has personal jurisdiction over Defendants.").

The undersigned next considers whether the private and public convenience factors weigh for or against transferring this action.

The private interest in access to sources of proof weighs against transfer. The documents that will likely be central to this dispute that will be relevant to this dispute appear to be largely in Dallas, Texas. The claims and counter-claims in this action primarily concern money that the Bossier parties contend that F&G owe to them during the time that Ms. Bossier worked at F&G. As a result, the documents that can be expected to be central to this action likely pertain to Ms. Bossier's employment at F&G and any payments she may or may not have received. F&G has explained that these records are generally kept in their Dallas office.

The Bossier parties contend, without support, that "[t]he overwhelming source of .. . evidence is in Mississippi," presumably because this action arguably arises out of Ms. Bossier's work on cases in Mississippi. *See* Dkt. No. 4 at 20. But, as F&G explains, "[a]ny files that were maintained in Mississippi while Ms. Bossier was a ... partner in F&G were transferred to either the Dallas or Birmingham office when Ms. Bossier resigned." Dkt. No. 8 at 24.

The private interest in limiting the cost of attendance for willing witnesses also weigh against transfer. As discussed above, this action primarily concerns whether "[F&G] reneged on their financial obligations and promises to Bossier, which included

promises to substantially share contingency fee recoveries with her." Dkt. No. 10 at 9. The likely witnesses in this action will include those who can speak to promises F&G's equity partners made to her during her time at the firm and the costs and expenses that the firm can properly attribute to her during this period. The party and non-party witnesses in this action will therefore likely be comprised largely of current and former F&G employees and independent contracts. These individuals appear to be largely based in the Northern District of Texas. They include Tim K. Goss as well as "the firm's Chief Financial Officer," "the firm's Director of Operations, who is tasked with handling Human Resources issues," and "F&G's outside accountants." Dkt. No. 9, Ex. A at 2.  In contrast, "[t]he only [F&G] employees in Mississippi were Ms. Bossier and a part-time legal assistant." *Id.*

The Bossiers have admittedly identified a number of likely non-party witnesses based in Mississippi. And, generally speaking, "the convenience of non-party witnesses, rather than that of party witnesses … is the more important factor … in venue transfer analysis." Dkt. No. 4 at 19 (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790-91 (S.D. Tex. 2005)). But "[t]he materiality and importance of each anticipated witness' testimony, rather than the number of witnesses residing in each location, is most important under forum non conveniens doctrine." *Hayes*, 2001 WL 1464708, at *4. And the Bossier parties do not provide any meaningful explanation as to why the testimony of these non-parties is important to this dispute. *See* Dkt. No. 4 at 15. As a result, the undersigned is unable to even infer that these likely witnesses

are able to put forth testimony key to this dispute. The convenience of non-party witnesses does not weigh toward transfer when these witnesses may be largely immaterial. *See IBEW-NECA Southwestern Health & Ben. Fund v. Duvall Electric, LLC*, No. 3:10-cv-1079-B, 2011 WL 711005, at*4 (N.D. Tex. Feb. 28, 2011) (finding "this factor to be neutral because, once again, it is not [at] all certain the testimony of these non-party witnesses will be needed at trial.").

The private interest in the availability of the compulsory process to secure the attendance of unwilling witnesses is neutral. Neither party identifies any likely witness who would be unwilling to testify based on the venue in which this action is heard. *See Ternium Intern. U.S.A. Corp. v. Consolidated Systems, Inc.*, No. 3:08-cv-816-G, 2009 WL 464953, at *3 (N.D. Tex. Feb. 24, 2009) (finding that this factor to be "neutral" because "CSI has not identified any witnesses that are unwilling to testify).

The public interest factors are also neutral.

As to the public interest in court congestion, neither party contends that either party's preferred venue is more congested than the other.

Nor have either of the parties successfully established that the remaining public interests are implicated in this action. These include interests in having localized interests decided at home, ensuring that the forum is familiar with the law that will govern the case, and avoiding unnecessary problems associated with conflicts of law.

Both parties contend that these public interest factors weigh toward their preferred venue because that venue's state laws apply to this dispute. But the choice

of law that applies to the dispute in question is not entirely clear and cannot be determined based on the present filings before the Court.

F&G contends that "Ms. Bossier has previously admitted that when she became a non-equity partner in F&G she was bound by terms of the Amended and Restatement Company Agreement of Freese & Goss, PLLC (the "Company Agreement"). The Company Agreement provides that it shall be construed in accordance with the laws of Texas." Dkt. No. 8 at 8 (internal citations omitted).

But it is unclear the extent to which this provision applies to the dispute. The scope of a choice-of-law provision, like any contractual provision, depends on its terms. A broad clause that purports for a particular state's law to "'govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract'" would likely "address the entirety of the parties' relationship" and apply to the parties' other claims even when they "do not arise out of the contract." *Caton v. Leach*, 896 F.2d 939, 943 & n.3 (5th Cir. 1990). In contrast, a narrow clause that purports that a particular body of law should be used to "construe" a contract only applies to the claims based on that contract. *See id.*

In the absence of a broadly written choice-of-law provision, some of the claims in this action may be governed by Mississippi law. *See* Dkt. No. 4 at 8 (arguing that the bulk of the claims arose in Mississippi). And others may be governed by Texas law, such as any claims based on the interpretation of the Company Agreement. It is thus unclear whether this factor weighs in favor of either venue.

-24-

But, in light of the other factors implicated, the undersigned concludes that this action should be heard in this district and not the Southern District of Mississippi. After all, just as "the federal district court in Mississippi can apply Texas law to the extent it even applies to any of the claims in this action," Dkt. No. 12 at 10, this Court can apply Mississippi law even if it is necessary to do so on some of the claims at issue.

## Recommendation

For the reasons explained above, the Court should deny Defendants Shiela M. Bossier and Bossier & Associates, PLLC's Motion to Dismiss/Abstain or in the Alternative Motion to Transfer Venue [Dkt. No. 4] and Plaintiffs' Motion for Leave to File Sur-reply [Dkt. No. 14].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 23, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE